**Jack Eugene THORNTON, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–96–366–CR.**

Court of Appeals of Texas,
Fort Worth.

Nov. 20, 1997.

Kenneth Mahaffey, Austin, for Appellant.

Barry Green, Wise County District Attorney, Decatur, for Appellee.

Before CAYCE, C.J., and DAUPHINOT and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

In a single charging instrument, a grand jury indicted appellant for two offenses: (1) aggravated sexual assault and (2) indecency with a child. A jury convicted appellant of each charge and sentenced him to thirty-seven and twenty years' confinement, respectively. Appellant presents five points for our review. We affirm.

One evening, appellant, his wife, and two eleven year old female visitors were playing a video game in a guest room at appellant's house. One of the visitors, J.S., fell asleep on the guest bed. Appellant picked her up and took her to another bedroom to go to sleep. J.S. awoke in the middle of the night and discovered that appellant had his hand down her pants and was rubbing her.

■ In his first point, appellant contends that the trial court erred in overruling his motion to sever the two offenses alleged in the indictment. When two separate offenses arise out of the same criminal episode, the State may join the offenses and try them at a common trial. *See* TEX. PENAL CODE ANN. § 3.02 (Vernon 1994). When the State properly joins two offenses pursuant to section 3.02, the defendant has a right to severance. *See id.* § 3.04. The right to severance, if timely invoked, is absolute. *See Coleman v. State,* 788 S.W.2d 369, 371 (Tex.Crim.App. 1990); *Overton v. State,* 552 S.W.2d 849, 850 (Tex.Crim.App.1977). Improper denial of a severance request is not subject to a harm analysis. *See Warmowski v. State,* 853 S.W.2d 575, 581 (Tex.Crim.App.1993).

■ In the present case, appellant moved for severance of the offenses after the jury was sworn, but before the trial court read the indictment. The question before us is simply whether his motion was timely. This is a case of first impression for this court. The statute conferring the absolute right to severance does not mention *when* an accused must invoke his right:

Whenever two or more offenses have been consolidated or joined for trial under Sec-

tion 3.02, the defendant shall have a right to a severance of the offenses.

Tex. Penal Code Ann. § 3.04(a) (Vernon 1994).

Case law on the matter is no more instructive. Cases involving section 3.04 make reference to "timely motion", but do not disclose precisely when the motion was filed. *See e.g. Warmowski,* 853 S.W.2d at 577 (making a reference to the "motion at trial", but silent as to when the motion was filed); *Overton,* 552 S.W.2d at 850 (noting that appellant "timely" apprised the trial court that he did not wish to have the cases tried together); *Waythe v. State,* 533 S.W.2d 802, 803 (Tex. Crim.App.1976) ("timely manner"). Thus, with little guiding authority, we must determine (1) what constitutes a timely motion for the purposes of section 3.04 and (2) whether appellant's motion was timely in this case.

■ In general, a defendant moves to sever joined offenses so that he may avoid the detriment that results when two offenses are tried together. The Court of Criminal Appeals recognized this in *Warmowski* when it noted that the legislature gave a defendant absolute discretion to "make the decision whether the consolidation of offenses pursuant to [section 3.02] will work to his detriment at trial." *Warmowski,* 853 S.W.2d at 578. If a defendant moves for severance so that he may avoid detriment at trial, logic dictates that a motion seeking to avoid that detriment must be made, at the latest, prior to trial. Once the trial commences, it is simply too late for the defendant to request that the offenses be tried separately.

In the present case, appellant made his motion after the jury had been sworn but before the reading of the indictment. Because we determine that the motion must be raised prior to commencement of trial, appellant's timing raises the issue of when a trial commences for the purposes of section 3.04(a). Our research reveals no case law directly on point. At least one court, however, has addressed the issue under similar circumstances.

In *Hinojosa,* the court addressed the commencement-of-trial issue in the context of an amendment to an indictment. *See Hinojosa*

*v. State*, 875 S.W.2d 339, 341–42 (Tex.App.—Corpus Christi 1994, no pet.). Article 28.10 of the Texas Code of Criminal Procedure allows amendment "at any time before the date the trial on the merits commences." TEX.CODE CRIM. PROC. ANN. art. 28.10 (Vernon 1994). In *Hinojosa*, the State attempted to amend the indictment on the day trial was scheduled to begin, but the question remained—when did a trial on the merits commence? *See Hinojosa*, 875 S.W.2d at 341. The court, finding no definition for "trial on the merits", turned to statutory interpretation. The court noted that article 36.01 of the Texas Code of Criminal Procedure, titled *Order of Proceeding in Trial*, first requires that a jury be impaneled:

A jury being impaneled in any criminal action, except as provided by Subsection (b) of this article, the cause shall proceed in the following order. . . .

Tex.Code Crim. Proc. Ann. art. 36.01(a) (Vernon Supp.1998).

Although the *Hinojosa* court did not elaborate on its use of article 36.01, it appears that the court correctly viewed article 36.01 as a legislative guideline for proceedings at trial. With 36.01, the legislature has at least implicitly suggested that trial begins with jury impanelment.[1]

Ultimately, however, relying solely on article 36.01 to determine when trial starts is unsatisfying. Article 36.01 guides only a trial by jury. Not every trial is to a jury.

There is, however, a more compelling reason in this case to use jury impanelment as the point at which trial began. It is at this point that jeopardy attaches in both federal and state courts. *See Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Jeopardy attaches when a jury is impaneled because it is here that a defendant is "put to trial before the trier of facts." *Ortiz v. State*, 933 S.W.2d 102, 105 (Tex.Crim.App.1996) (citing *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265, 274 (1975)); *See also Ex parte Hayes*, 931 S.W.2d 721, 722 (Tex.App.—Fort Worth 1996). The

Court in *Ortiz* further noted that "[a]t that point [jury impanelment] the trial has begun before the chosen tribunal on the contested issue of the defendant's guilt or innocence." *Ortiz*, 933 S.W.2d at 105.

■ Accordingly, we hold that in order to be timely, a defendant must request a severance before jeopardy attaches. In the present case, appellant filed his motion for severance after the jury had been sworn and jeopardy had attached. Therefore, it was untimely. Appellant's first point is overruled.

■ In his second point, appellant challenges the legal sufficiency of the evidence supporting his conviction.

In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *See Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Emery v. State*, 881 S.W.2d 702, 705 (Tex. Crim.App.1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

The legal sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof

---

1. We use the term "suggested" because some subsections of article 36.01 have been held to be directory rather than mandatory. *See generally Moore v. State*, 868 S.W.2d 787 (Tex.Crim.App. 1993). Thus it is unclear how strong of authority article 36.01 is for determining when a trial starts.

beyond a reasonable doubt. *See Matson*, 819 S.W.2d at 846.

The evidence of appellant's guilt included the following testimony from J.S.:

Q: When you said that he was moving his hand and pushing, and it hurt when he pushed hard, could you explain to the jury exactly what part of your private part you're talking about?

A: Not the outside, but the inside.

Q: And is that different from the hole?

A: Yes, It's not the outside. It's like, kind of inside.

Q: Inside where you wipe?

A: Yeah.

. . . .

Q: So, he—He had his hand down here and he pulled your hand over to touch his penis?

A: Uh-huh.

Q: Okay. And did he hold his hand on yours on top of his penis or make you rub or squeeze or what?

A: He put it on—just on there.

. . . .

Q: And then with one of his hands he reached over and got your hand—

A: Uh-huh

Q: —to touch his penis. Okay.

A: He used this one—hand (Indicating.)

Q: Okay. And which hand of yours did it touch him [sic]?

A: This one (Indicating.)

More evidence came from a statement that appellant gave police shortly after the offense. The statement taking officer read the statement to the jury. In the statement, appellant revealed that he:

[B]egan rubbing her on the—on the stomach and moved my hand down over her vaginal area, rubbing her but not trying to probe her vagina.

She woke, and I took her hand and placed it on my [penis]. . . .

. . . .

In rubbing her, my hand may have slipped under her panties and slipped into her vaginal lips, but not intentionally.

Viewing the evidence adduced at trial in a light most favorable to the verdict, we find that any rational trier of fact could have found, beyond a reasonable doubt, that the defendant (1) penetrated the female sexual organ of J.S. and (2) engaged in sexual contact by causing J.S. to touch his genitals. Point number two is overruled.

■■■ In points three and four, appellant challenges the factual sufficiency of the evidence supporting his conviction and the factual sufficiency of the evidence supporting the jury's implicit rejection of his insanity defense. This court has the authority to review fact questions in criminal cases. *See Clewis v. State*, 922 S.W.2d 126, 129–30 (Tex. Crim.App.1996). In reviewing the factual sufficiency of the evidence to support a conviction, we are to view "all the evidence without the prism of 'in the light most favorable to the prosecution.'" *Id.* at 129 (citing *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed)). We may only set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.*

■■■ The *Clewis* standard is strikingly similar to the standard for reviewing a factual sufficiency claim regarding an affirmative defense. In reviewing the factual sufficiency of the evidence regarding an affirmative defense, we must consider all the evidence relevant to the issue of insanity and determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Crim.App.1990). In looking at all of the evidence for our *Clewis* review, we will necessarily look to all of the evidence on the issue of insanity. Therefore, we will review points three and four together.

In the present case, appellant presented evidence through expert witnesses that he suffered from a neurological defect causing "partial complex seizures." One expert witness testified that, due to appellant's defect, she did not "think [appellant] was aware of what he was doing" when he committed the offense. Another defense expert testified

that appellant did not know his conduct was wrong due to partial complex seizures. Still a third defense expert testified that, based on a series of tests, appellant did not fit the profile of a pedophile.

The State presented its own expert who testified that she performed a neurological exam and the results were normal. She also testified that the statement appellant gave to police was inconsistent with partial complex seizures because appellant did not mention any loss of awareness.

Additionally, there was conflicting evidence between statements appellant gave to his doctors and his testimony at trial. He told two of his doctors that he had no memory of the events and that he did not remember anything. On the witness stand, however, he testified that he recalled waking with his hands down J.S.'s panties and in his statement to police, he recalled rubbing J.S's stomach and vagina. The jury also heard J.S.'s testimony and the statement appellant gave to police.

Although appellant provided evidence contrary to the jury's verdict, we cannot say that his evidence constituted such a great weight and preponderance as to render the jury's verdict clearly wrong or manifestly unjust. We find that the evidence was factually sufficient to support the jury's finding on guilt and it's implicit rejection of appellant's insanity defense. Therefore, we overrule points three and four.

 In his final point, appellant alleges the trial court erred in responding to an ambiguous jury note and in giving additional instructions that did not answer the jury's questions. During deliberations at punishment, the jury asked:

> Is the 30 years mentioned in paragraph 3 of the charge applicable to each sentence/count or to a combination of both sentences/counts. Will these be concurrent or stacked!

The trial court responded:

> The Court is unable, under the law, to answer your question, and instructs you to consider only the instructions that have been given you.

The Court further instructs you that any punishment assessed for Count I and Count II will be served concurrently (at the same time.)

Appellant contends that the note was ambiguous because paragraph three contained no reference to "30 years." Appellant also asserts that the question was so vague that it was impossible for the court to determine what the jury was asking. Finally, appellant claims that the trial court's answer was not "responsive to a clear and concise question" and that it amounted to "invading the province of the jury."

First, we note that the question was not as ambiguous as appellant argues. The third paragraph of the second page of the punishment charge discusses parole eligibility and mentions "one-half of the sentence imposed or 30 years, whichever is less." It is clear that this is the paragraph about which the jury asked. Further, it appears that the jury's second question was meant as a clarification of the first question. The jury emphasized the question with an exclamation point. It appears that the jury simply wanted to know if the sentences were to run concurrently or consecutively. Finally, the trial judge answered only that question in his response. He did not address the reference to thirty years, he simply answered the jury's question of how the sentences would run. It is proper for a trial court to respond to such an inquiry. *See Gordon v. State*, 633 S.W.2d 872, 878–79 (Tex.Crim.App. [Panel Op.] 1982). Appellant's final point is overruled.

Because we have found no reversible error on the points appellant raises, we affirm the trial court's judgment.